NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JANE B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.R., *Appellees.*

No. 1 CA-JV 14-0178
FILED 12-11-2014

Appeal from the Superior Court in Maricopa County
No. JD510757
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1        Jane B. ("Mother") appeals the juvenile court's termination of her parental rights to four-year-old J.R. based on nine months' time in care and on 15 months' time in care. Mother argues that the court failed to properly consider whether the Arizona Department of Child Safety ("DCS") provided her adequate and meaningful reunification services, and that the court erred as a matter of law by permitting DCS to amend its severance motion to include the 15 months' time in care ground after the hearing had commenced. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Mother has a significant history of substance abuse that has kept her from safely parenting J.R. Services offered to Mother in the past have included substance abuse treatment, drug testing, psychological evaluations, parenting classes, parent-aide assistance, and counseling. Mother did not, however, take advantage of these services.

¶3        Mother began using heroin at age 18, and within a few years she was also using methamphetamine and abusing an OxyContin prescription. When she gave birth in 2010, Mother tested positive for methadone, OxyContin, codeine, and Percocet, and J.R. tested positive for opiates. As a result of being exposed to these substances in utero, J.R. experienced severe withdrawal symptoms following his birth and was taken into custody by DCS until he was three months old, after which he was returned to Mother.

¶4        Mother was offered substance abuse treatment for her addictions. But she failed to attend three scheduled intake appointments at the substance abuse treatment center, and she did not comply with random drug testing requirements. Because she stopped responding to the program's outreach attempts, the substance abuse services were discontinued in February 2011.

¶5            In January 2013, Mother was incarcerated for failing to appear on a first-degree burglary charge.  Because J.R.'s biological father was also incarcerated at the time, Mother left J.R. in the care of her sister, the child's maternal aunt, before going into state custody.  DCS subsequently rejected the placement with J.R.'s maternal aunt, and J.R. was placed in DCS custody on January 19, 2013.  DCS thereafter began dependency proceedings.

¶6            Mother received several additional referrals for substance abuse treatment in the months following J.R.'s removal.  The first two were again closed out due to her noncompliance, but she successfully completed an intake appointment for the third referral in October 2013.  Mother tested positive for methamphetamine on the date of her intake appointment, and she reported that during the previous 12 months she had used marijuana, alcohol, methamphetamine, poly substances, and heroin.  A triage form from the time of the referral noted that Mother's "[s]ubstance use has caused cognitive impairments which preclude [the] ability to abstain without significant intervention," and that Mother's "[r]esistance [level was] so entrenched that treatment success [was] highly unlikely."

¶7            Mother did not continue with the treatment plan after the initial meeting.  She missed appointments to enroll in group therapy, and again failed to comply with drug testing requirements.  As a result of Mother's noncompliance, treatment services were terminated, and in November 2013, DCS moved to terminate Mother's parental rights to J.R. based on substance abuse and nine months' time in care.

¶8            At a contested severance hearing that began on April 15, 2014, Mother testified about her drug use.[1]  She stated that she began using drugs as a teenager, and that although she had previously had long periods of sobriety, she had relapsed after J.R.'s removal from her home.

¶9            When asked why she did not submit to required drug testing, Mother testified that she "[didn't] see the point in going and taking a drug test that [she] already [knew] the results of" because she knew she would test positive.  At the time of trial, Mother had not submitted to drug testing in over six months, and each of her referrals for treatment had been closed out at due to noncompliance.  Mother also indicated that she had not complied with drug testing requirements because she believed they were optional.  When questioned why she did not take advantage of substance

---

[1]     The court also ordered the uncontested severance of J.R.'s father's rights due to abandonment, nine months' time in care, prior termination, and length of incarceration.

3

abuse treatment programs, Mother said, "I don't know. I started. I just never followed through."

¶10 Mother's participation in other reunification services was similarly deficient. At the severance hearing, Mother stated that she was initially allowed one visit per week with J.R., and that despite being offered transportation to and from these visits, she missed several meetings due to "the ridiculous stipulations of getting to see him." Mother only visited J.R. four times over a six-month period. Because she did not show up for other scheduled visits, Mother was asked to call and confirm that she would attend prior to each visitation. Mother did not comply with that procedure and would become upset with the case aide when visits were cancelled based on Mother's failure to call ahead. At the time of the severance trial, Mother had not seen J.R. for six months, and he had been in an out-of-home placement for just under 15 months.[2]

¶11 Mother alleged that several of her missed meetings were due to DCS intentionally scheduling her visits at the same time as her criminal court appearances. Although Mother testified that she told her case aide about this, nothing else in the record references Mother informing DCS of these conflicts.[3] Moreover, Mother also asserted a variety of reasons for missing her visits with J.R., including "the ridiculous stipulations of getting to see him," visit times changing from the original schedule, and not getting outside quickly enough to take advantage of the transportation provided for visits.

¶12 The court permitted a one-month recess to allow the parties time to draft objections to the remainder of the proposed hearing exhibits. After ruling on the parties' objections, the court reconvened the hearing on May 23, 2014, but Mother failed to appear at the time set for trial, and the hearing proceeded in absentia.

¶13 The case manager opined that due to Mother's history of substance abuse and her unwillingness to participate in the treatment programs provided her, Mother was unable to carry out her parental responsibilities. The case manager further testified that there were "reasonable grounds to believe that [Mother's] condition will continue for a prolonged, indeterminate period" of time. The case manager also noted

---

[2] J.R. was removed on January 19, 2013, and the severance trial began on April 15, 2014.

[3] Mother also testified that if a visit was cancelled, her case aide would place her name on a waiting list for the next available opening.

that Mother's most recent request for visitation with J.R. was in November 2013, and although visits were scheduled, Mother again failed to attend.

**¶14**            As of the date of the second day of the hearing, J.R. had been in an out-of-home placement for over 15 months. DCS accordingly moved to add the 15 months' time in care ground to the severance motion. Mother's counsel did not object, and the court allowed the amendment.

**¶15**            While the court was entering its findings, Mother called in and explained that she was not at the trial because she was ill. Mother stated that she had recently gone for in-patient treatment, but that it had not helped her so she did not complete the program. The court ruled that Mother had not established good cause for her absence and continued with its findings.[4]

**¶16**            The court terminated Mother's parental rights, finding that DCS had proved substance abuse, nine months' time in care, and 15 months' time in care grounds by clear and convincing evidence.

**¶17**            Mother timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 8-235(A).[5]

### DISCUSSION

**¶18**            "We view the evidence in a severance case in the light most favorable to sustaining the juvenile court's findings." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13, 256 P.3d 628, 631 (App. 2011). A juvenile court's decision will not be disturbed unless it was clearly erroneous or an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). Because a trial court is in the best position to weigh the evidence, judge the credibility of witnesses, and make factual findings, this court only considers whether there is evidence sufficient to uphold the superior court's decision. *Id.*

**¶19**            The superior court can terminate an individual's parental rights if it finds clear and convincing evidence that supports at least one statutory severance ground under A.R.S § 8-533, and also determines by a preponderance of the evidence that severance is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). Two such statutory grounds are nine months' time in care, requiring proof

---

4        The court also struck the in absentia determination.
5        Absent material revisions after the relevant date, we cite a statute's current version.

that "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement," and 15 months' time in care, requiring proof that "the parent has been unable to remedy the circumstances" necessitating the out-of-home placement and that "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(a), (c).

¶20        "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002). Here, we conclude that the juvenile court correctly ordered severance based on the nine months' time in care ground, and we thus need not address Mother's arguments regarding 15 months' time in care.

¶21        There is no dispute that J.R. was in an out-of-home placement for more than nine months, and Mother does not challenge the best interests finding. Mother argues, however, that the juvenile court abused its discretion by rejecting Mother's argument that DCS did not provide adequate and meaningful services.

¶22        DCS has a duty to make "all reasonable efforts" to reunify a family before terminating parental rights. *Christina G.*, 227 Ariz. at 234–35, ¶ 14, 256 P.3d at 631–32. Although DCS must make services available to parents, it is not required "to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* at 235, ¶ 15, 256 P.3d at 632 (citation omitted). Nor is DCS required to provide services that are futile or lack a reasonable probability of success. *Id.*

¶23        Here, DCS offered numerous services, but Mother did not take advantage of them. Although Mother was given several opportunities to attend substance abuse treatment, she did not follow through with scheduled appointments and with drug testing requirements. Nor did she take advantage of available psychological counseling, parenting education, parent-aide services, and family and group counseling services.

¶24        Similarly, Mother did not take advantage of numerous opportunities to visit J.R., notwithstanding DCS's offers to provide transportation and to work to reschedule missed visits. Accordingly, the juvenile court did not abuse its discretion by severing Mother's parental rights based on the nine months' time in care ground.

## CONCLUSION

¶25        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama